Please call the next case. Good morning, Your Honors. May it please the Court, my name is Eliza Kaliske from the Office of the State Appellate Defender on behalf of Patrick Givens. This morning I would like to focus on the second issue of the brief, which is straight ineffective assistance of counsel for introducing the videotape that became the basis of the judge's guilty finding in this case. And if there is time I will touch on the first issue of conflict of interest, but I'm happy to answer questions about any of the issues. So this was a case in which the State presented against Mr. Givens only the testimony of the undercover officer, Officer Merritt, who testified that on August 3rd, 2005, she arrived at 6438 South Oakley. She parked on the right side of the street. She approached the gangway where Mr. Givens was standing and she testified that he asked her how many she wanted. She said two. They went into the gangway. On cross-examination, the defense counsel asked her if in fact hadn't Mr. Givens been across the street and in fact hadn't there been a third person that went into the gangway with them. And she said no. At that point, defense counsel introduced the video, the August 3rd, 2005 video, that the State had not introduced and that the State concedes it had no intention of introducing. This video, this is a video that the State had not introduced against Mr. Givens. It had not presented the video officer and it had not had Officer Merritt authenticate the video in her direct exam. This video, and the State concedes in its brief that it did not introduce the tape and suggests that it didn't intend to because the State's position is it didn't help or hurt their case. However, this video largely corroborated Officer Merritt's testimony. It shows what side of the street she pulled up on. It shows Mr. Givens. It shows her following Mr. Givens into the gangway. This video then becomes the sole basis for the judge's guilty finding. When the judge is considering the evidence against Mr. Givens, his entire ruling comes down to Mr. Givens was captured on tape during the one transaction and that was on August 3rd, 2005. There's no question about what was on the tape, what was seen. Thus, this piece of evidence became the sole basis of the finding and there was simply no reasonable strategy that would call for introducing a tape that corroborates the only witness against your client, especially in this case where it appears that defense counsel simply didn't know what was on the tape. When he puts it on and they go through it, he says, I thought it was going to show something else. And he even thinks at some point that perhaps he's got the wrong video. He comes back to court on the next day and says, well, actually I was thinking of a different time period. So he doesn't know what's on the tape and there's no reasonable, rational strategy that would justify putting on this tape to try to impeach the officer if you don't know what's on that tape. And this case is thus analogous to this court's decisions in Bailey and Orta. Both cases where defense counsel unreasonably elicited evidence against the defendant that was very damaging and that ended up being part of the trial judge's decision. Counsel, isn't it true that officer Merritt's testimony would have been sufficient to convict the defendant regardless of what was on that tape and therefore the prejudice prong has not been met? Well, Your Honor, first I would point out that in both Bailey and Orta, those are cases where the prejudice prong was found to be met because the judge relied in part on the evidence that defense counsel had unreasonably elicited. But also, in this case, we have an undercover officer who comes to court and twice IDs a different defendant as the person who sold her the drugs in the gangway. So the question for the judge to resolve was not really whether a drug transaction had taken place in the gangway that day, but who was in the gangway with this officer. And she has twice identified co-defendant Joseph Pearson as that person who was in the gangway with her. So then the judge sees the tape, which clearly shows Mr. Givens going into the gangway, followed by Officer Merritt. And so this, the evidence of the ID of who's in the gangway was not overwhelming. In fact, it was pretty shaky. And so introducing the tape then undoubtedly prejudiced Mr. Givens because it became the basis of that guilty finding. But was it the basis of the guilty finding? Or are you just saying because there was a finding of guilt and this was something else that was piled on in addition, that therefore it satisfied the prejudicial prong? I mean, I think that the case law also says that the, it should not just, the prejudicial prong should not just be outcome determinative, but that rather it has to be the reason for the determination. Well, the, to satisfy prejudice under Strickland just has to show that counsel's unreasonable performance undermined confidence in the verdict. And the judge's entirety of his. It has to show that that performance by defense counsel rendered the result of the defendant being convicted. Right. There's a stronger connection than what you are. I don't see exactly what you're saying in terms of that strong connection when there are other factors that all came together in order to render determination of guilt. But the entirety of the judge's statement as to why he finds Mr. Givens guilty of this delivery is because Mr. Givens was captured on tape during his one trial. During his one transaction, there's no question about what was on the tape, what was seen. And that's on page X13-14 of the record. That is all he says for why he is convicting Mr. Givens of that offense. And so where this is the basis of his guilty verdict, how can counsels, having introduced this tape, not undermine confidence in the verdict? How does it not render the verdict and the outcome unfair when counsel's conduct appears to be directly what led to the judge's guilty finding? The judge never mentions Officer Merritt's testimony, not once. And he bases it all on this tape. And undoubtedly, that's in part due to her shaky in-court identification of who was in that gangway with her. You're talking about Merritt? Yes. What result would have obtained if Judge Lynn had not made reference to the videotape in his finding? You mean, for instance, if he had just said, I believe the officer's testimony? Or whatever. I think it would be a finding of guilt. Just there's a finding of guilt here? I think still in part in this case because it's not just the judge's statement where he relies solely on this video. But it's also that the state uses this statement, the state uses the video in its closing argument as well. So I think we would still have the same argument to present because the state realizes how shaky this in-court ID is. And that's why the state ends up having to argue, well, you saw the videotape. You saw the videotape, you heard the testimony, but you saw the videotape. But that doesn't make sense if your position is also that the state has conceded that they had no intention to use in the first instance the videotape. Well, but once counsel introduces it unreasonably, it's not surprising that the state would use it to its advantage. Just because they didn't intend to introduce the tape themselves doesn't mean they can't say, well, look, it corroborates up until the point where we get to the gang. Because this video doesn't show the interior of the gangway, it's all based on American's testimony. The third person was never captured on at least the portion of the video that was shown. Is that correct? Right. Later on the video, you do see Givens and two other people headed back in that direction. And that's probably what defense counsel was thinking of. But still, if you're going to introduce this tape, you need to know what's on there. And he appears to have had no idea what was on the beginning of this tape. Your position, counsel, is that the defense lawyer's performance was, as the case law says, objectively unreasonable under prevailing professional norms. In other words, you wouldn't put in a video that showed your client committing the crime under any circumstance. Right. I mean, especially a case like this where you've seen that the undercover officer had trouble identifying your client. Why in the world would you put something on in cross-examination that would clear that up at all? And I would point this part out to this court's decision in Bailey where defense counsel on cross-elicited evidence of other interactions between the defendant and another defendant in a drug case. And defense counsel starts asking about what's in this vice report. And that's where that damaging evidence comes from. And this court noted counsel either didn't know what was in the report or didn't think about it. And I submit that's pretty much what's going on here. Samaritan either doesn't know what's on that video, and I submit the record seems to be pretty clear. He just doesn't know. And why does ORTA support your position in that regard as well? ORTA supports our position more to the prejudice prong because I believe counsel in ORTA was attempting to get at the element of constructive possession in a possession with intent to deliver case. But in both Bailey and ORTA where that evidence that counsel elicits becomes even part of the judge's guilty finding, you have met the prejudice prong strictly. And in this case, it is all of the judge's guilty finding. And so it's simply both Bailey and ORTA support our position and mandate really that this court reverse and remand for a new trial on that basis. I believe I will save my remaining time for rebuttal unless this court had any other questions. Thank you. Thank you. Polly. Good morning. May it please the court. My name is Whitney Bond, and I'm an assistant state's attorney representing the people of the state of Illinois in the matter of People v. Patrick Gibbons. As counsel has pointed out, she's focused on the issue of ineffective assistance of counsel. And the people would first like to submit that in our brief, we did contend that the people at trial had no or decided not to put in the videotape. That was a mistake. There's nothing in the record, in closer look, that would suggest that counsel at any point was suggesting that she was going to not put in this videotape. I'm sorry to interrupt. I didn't understand. What was the mistake? The mistake is on my part. I suggested in my brief that in arguing that there was no prejudice in this case, I made the statement that the tape does not help or harm the people. So you're making reference to your brief on what occurred at the trial? Yes. Okay. No, there's nothing in the record that would suggest that counsel had made any sort of strategic decision to put in the videotape or not put in the videotape. The fact remains, after Officer Merritt's testimony, people had not rested. So certainly the people would have the opportunity to call Officer Julius Beecham, who was the videotape surveillance officer, to lay the proper foundation and enter the tape into evidence. What I was doing in my brief was simply saying that the tape, in an argument I got about prejudice, which is the prong that we're focusing on here, is that the tape in and of itself simply corroborates Officer Merritt's testimony. The tape shows exactly what Officer Merritt testified to. She parked her car. She got out of her car. She was approached by the defendant. They entered into a gangway, disappeared off the tape, came back, she got in her car, and she drove away. The people's point in stating in the brief that the tape didn't matter was simply to say that there was nothing on the tape that trial counsel entered into evidence that was going to harm or hurt his case. Essentially it was just corroborating what Officer Merritt already testified to. And in that vein, the people submit that this is why this case is very different than Bailey and Orta. What was happening in Bailey and Orta was perhaps a misguided attempt to, in both cases, impeach officers. And in so doing, the defense counsel in those two cases was eliciting information that the people themselves could not elicit on their own. Essentially what both counsels did in Bailey and Orta was to prove an element of a crime that the people themselves could not prove. And the people submit that in this case, that did not happen. The entirety of officers... Can I just stop you for one second? Sure. I mean, in this case, the state had questioned the officer, and it wasn't a matter of three men all sitting there in black suits. There's a green suit. There's a red suit. They have the colorful clothes that they were wearing in court. But the officer twice says it's the guy in the green suit. Of course, identifying Mr. Peterson incorrectly, not Mr. Gibbons. So, I mean, isn't the defense lawyer, when the defense lawyer comes back, basically eliciting an identification, a strong identification for the state that the state has failed to do with their eyewitness, with their by officer? I understand what you're saying, and I think what's important to note in that regard is the entirety of the record with regard to Officer Merritt's identification of the defendant. As Justice Lincoln pointed out, she does say the person in the multicolored green shirt. And then defense counsel interjects, attempting to interject, I would like the record to reflect. At that point, the court jumps into the situation, and it seems to be that there's some sort of color ambiguity that's going on. Because what he's seeing is, and this is just based solely on what's going on in the record, what he's seeing is some person in the green, some person in the red, and a person in the suit. He's not identifying. What was the last thing you said? Green, red, and what? Green, red, and a person in a suit, which I'm assuming would be Mr. Martin. The court did this twice with Officer Merritt. And then after it was done, the court puts on the record that at first Officer Merritt indicated, quote, So at this point, the court- Twice. Twice. She identified Pearson. She said, it's the green multicolor. The trial court says, the one in the green is the one you're talking about. And defense counsel interjects, let the record reflect. The trial court says, just a second, the one in the green. The guy in the green, the guy in the red, or the guy in the suit. Then she says, no, I'm sorry, the one in the red. And then the trial court places on the record that at first she indicated co-defendant Pearson, and then she indicated Patrick Gibbons. In this regard, what's important to note is that this is a bench trial. These are questions that are coming from the trial court to address whether she- The bottom line is that, you know, other than this videotape, there really was no- And Officer Merritt's testimony. There was no other evidence to connect the defendant to the drug transaction, which is why the videotape looms even more important, and that's why I'm sure the court makes this decision on it. Because you've got the shaky testimony of Officer Merritt, and then you've got- And that alone, without the videotape, would have been a very, very weak case as far as the state is concerned. As far as the judge was concerned. There's no other evidence connecting the defendant to the drug transaction. But the bottom line is that the trial court is sitting as the arbiter of fact. He understood what sort of identification Officer Merritt was making, and it was in the trial court's discretion to determine whether or not that identification was credible. Ultimately, the court found that it was credible. And it's difficult to argue that but for this videotape. You mean her correction when she corrected herself and said something akin to- I'm sorry, in the red suit. Yes, and I think what we're taking here is we're taking a record, and we're looking at it analytically with, you know, the ability to argue one way or the other. I think what's happening here is that there's simply- That's the only way we can do it, isn't it? Well, it is. But I'm saying that at the time, the trial court was the one sitting in the chair. And he was the one that was determining whether or not what she was seeing and what she was describing was properly attributed to each defendant. So you're suggesting that there was-I'm sorry-that there was something else going on that wasn't reflected in the record- No, I'm- No, what I'm suggesting-and I didn't mean to cut you off by applause here. What I'm suggesting is that Judge Lynn is a learned judge, that he is understanding what's going on in the severity of how important an identification is of the defendant, and was simply attempting at this point to clarify the record. And that in his mind, when we're looking back, looking at just this record, Judge Lynn was satisfied that Officer Merritt made the proper identification of the defendant. And you say that because why? Because that-in essence, the court was comfortable with how the identification went down and made it a point to put on the record that Officer Merritt had originally identified the co-defendant and then eventually identified the defendant. Can I just interrupt you again? I'm sorry, I hate to interrupt. Oh, yeah. I just-I was-I held on for Justice Patty. Okay, so the-and so the reason for the-that the court was then resolved to determine or to believe in the credibility of Officer Merritt was sealed and bolstered because of the videotape. You're saying that he was a try of the fact and he was-he determined that Officer Merritt testified credibly because-and the reason he was able to resolve that doubt was because of what he had seen on the videotape. And I would-I agree with you. And what I'd submit is that Officer-excuse me, Judge Lynn, what he saw on the videotape, that wasn't something that he would never have gotten to see. Certainly that-at that time, the people hadn't rested. If the people entered that videotape, there's nothing to suggest that this videotape wasn't coming in. This wasn't a situation like Bailey or Orta where there was evidence presented by defense counsel that the state had no purpose or no prospect of actually entering themselves. Judge Lynn was going to see this videotape. Why? The state didn't introduce it. The state didn't have to. Defense counsel made-already made the mistake in defense counsel's mind that he entered a tape that he was mistaken. He was mistaken at the time. However, that tape was going to come in. Why was it going to come in? But for the defense counsel's introduction of the wrong section, as he states, of the videotape. How was it going to come in? The state didn't present it. The state couldn't present it. But it didn't. But it didn't have to. It was already in. Defense counsel was mistaken. Defense counsel was attempting to do the best that he could with what he had. That's the tail wagging the dog. I'm sorry. I understand the argument, but I think the logic is a little faulty, and I mean no disrespect to you. No, and I understand what you're saying. I think what we're boiling this down to is whether or not this defendant was prejudiced by defense counsel's introduction of the videotape. Defense counsel was confused about a time on that videotape. There was certainly a litany of videotapes that was going on throughout this trial. Now, what he was attempting to do, which would be admirable if you have one witness, an undercover officer, he was attempting to impeach her. He simply made a mistake as to what time on the videotape would have impeached her. Now, if we take this out and that had never happened, he had never gotten in that videotape, then the people could have gotten in that videotape. There's nothing to suggest that there was anything about this videotape that wouldn't be entered into evidence. And certainly the court would be seeing on that videotape exactly what he saw when it was entered by defense counsel. I think that's where you're getting back to my initial point, that the defense lawyer introduced an element of the state's case for them, that is the identity of the offender. Therefore, the state didn't have to prove an element of their own offense. I mean, looking back at the record, this witness had in two questions in a row identified the wrong person. It was not once and then the judge corrected her. She was asked to identify the person. She said the one in the brave, the green, multicolored shirt. Then the defense attorney was about to say she was identifying somebody else. And the court said, I'm sorry, what color? And again, she said, it's green, multicolored. And then the judge asked her again, the one in the green. So she'd already done it twice. And the defense lawyer again tried to bring out that she was identifying the wrong person. And when the court talked to her, she said, no, she was sorry, it was the one in the red. So at that point in time, the officer's, certainly her identification was less than stellar. And then the defense attorney introduces on his cross-examination of this witness a tape showing it is the defendant. Identity being the issue in the case. And that's exactly, you're right, that's exactly what happened. That's exactly what Officer Merritt testified to. But the point in an ineffective assistance of counsel issue is whether or not this defendant was prejudiced by this counsel's behavior. And it's the people's position. What if it was a jury? I mean, you're saying, what if it was a jury? If it was a jury, then the people's position would still be the same. Essentially, I would think if this was a jury, we'd have more of an issue with the trial court's question. But if this was a jury and we're still talking about ineffective assistance of counsel, then what we have here is also the same thing. After this, Officer Merritt gets off the stand. How could we not have been prejudiced by the introduction of this tape when the court wholly relied on, not on Officer Merritt's testimony, never mentioned it, but relied on the videotape in making its ruling? Because we're talking about prejudice in terms of what defense counsel's choices are. I mean, of course he's going to be prejudiced by what's on the tape. It helps find him guilty. But it's defense counsel's abilities and defense counsel's actions in this case. The defense counsel's actions prejudice him. This is a videotape that was going to come in. This is a videotape that corroborates the defendant or Officer Merritt's testimony that she went down this alley and bought drugs from the defendant. What trial counsel did is very different than the prejudice that is seen. It's evidence against him, of course. It's prejudicial. But his actions are what's prejudicial. And it's difficult to argue that but for counsel's actions, this defendant never would have been found guilty, which essentially is the essence of an ineffective assistance of counsel. Is it your position that it is a foregone conclusion that had Merritt not made the, quote, mistake, close quotes, not once but probably twice, that the state still would have introduced the videotape? I think if... Is that a foregone conclusion? You're asking me if Merritt had made this mistake of identification. Correct. If it was just, yes, that's the defendant, sort of identification is what you're talking about. The guy sitting over there in the red jumpsuit or whatever. And then he would have not entered the videotape? Is that what you're asking? Correct. No, I believe he still would have. I mean, at that point, I mean, the job of the people is to seek justice and procure a guilty verdict. And if we have evidence that's going to be admitted into evidence that helps support testimony, then... So it's a foregone conclusion that had Merritt not made the mistake, the state would still have attempted to introduce the videotape? Yes. I believe that the ASA in this case is a very good ASA and that they would do, if there's evidence that helps support a finding, and I don't believe that this would be piling on, which, you know, it's simply a corroboration of Officer Merritt's testimony. And if the Court has any more questions, the people would just reiterate that what is important to note here is that this is an ineffective assistance of counsel. What was counsel's actions in this case? And the people believe that counsel's actions did not prejudice the defendant in this matter. And for the reasons that we have argued in our brief and those that we've talked about here, we ask that you affirm the defendant's conviction. Thank you. Ms. Butler? Just a few quick points, Your Honor. As the state points out, it's now not conceding that the defendant had to introduce the video, but it makes no sense to say that, well, they still could have, even if defense counsel couldn't have. Even if defense counsel had it, that the state still would have introduced the video. Because you would think that when you have Officer Beecham on the stand, doing all the videos for all the other dates, you would have asked him about this state while he's up there, instead of making him come back another time. And when you've got the shaky in-court identification by Officer Merritt, you would think that a competent state's attorney would at that point say, hey, by the way, let's show you the video. Why don't you authenticate it? Does it show what you saw that day? The state didn't do either of those things, and I think the record indicates then that the state really didn't intend to introduce that video. Additionally, the state points out that the judge found the ID by Officer Merritt credible, the eventual ID of Mr. Gibbons credible, but he did so because of the video, because the video shows Mr. Gibbons on it. And let's see. The last thing I want to touch on is the standard for prejudice is not whether without this video, Mr. Gibbons would have been found guilty. It's whether counsel's objectively unreasonable conduct in introducing this video undermines the confidence in the verdict and denies Mr. Gibbons a fair trial. And here, the video was the basis of the judge's guilty finding. And to say that counsel's unreasonable conduct in putting on this video that became the basis of the finding doesn't undermine the judge's guilty verdict just does not make sense. The video settled the issue of identification, and counsel didn't get anything useful out of it. All he did was end up corroborating the officer's testimony about who was in the gang with her. And so that's under Bailey and Orda, that is clearly prejudice sufficient to meet Strickland. And if this Court has no further questions, I ask you to do so. Thank you, counsel. The verse is amended. We will take this matter under advisement.